## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DENISE M. SMITH, | : | |
| Plaintiff | : | CIVIL ACTION NO. 4:11-CV-1230 |
| vs. | : | (Complaint Filed 6/29/11) |
| MICHAEL ASTRUE, COMMISSIONER OF SOCIAL SECURITY, | : | (Judge Caputo) |
| Defendant | : | |

## MEMORANDUM

## BACKGROUND

The above-captioned action is one seeking review of a decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Denise M. Smith's claim for social security disability insurance benefits and supplemental security income benefits.

On August 11, 2008, Smith filed protectively[1] an application for disability insurance benefits and on August 16, 2008, an application for supplemental security income benefits. Tr. 31, 79, 81 and 109-117.[2] The applications were initially denied by the Bureau of Disability Determination[3] on April 16, 2009. Tr. 82-90. On May 29, 2009, Smith requested a hearing before an administrative law judge. Tr. 17 and 93-94. After about 12 months had

---

[1] Protective filing is a term for the first time an individual contacts the Social Security Administration to file a claim for benefits. A protective filing date allows an individual to have an earlier application date than the date the application is actually signed.

[2] References to "Tr.___" are to pages of the administrative record filed by the Defendant as part of his Answer on September 6, 2011.

[3] The Bureau of Disability Determination is a state agency which initially evaluates applications for disability insurance and supplemental security income benefits on behalf of the Social Security Administration. Tr. 82 and 86.

passed, a hearing was held on May 19, 2010. Tr. 31-60. On June 22, 2010, the administrative law judge issued a decision denying Smith's applications. Tr. 17-27. On August 9, 2010, Smith filed a request for review with the Appeals Council and on May 13, 2011, the Appeals Council concluded that there was no basis upon which to grant Smith's request. Tr. 1-6 and 11-13. Thus, the administrative law judge's decision stood as the final decision of the Commissioner.

Smith then filed a complaint in this court on June 29, 2011. Supporting and opposing briefs were submitted and the appeal[4] became ripe for disposition on January 2, 2012, when Smith elected not to file a reply brief.

Disability insurance benefits are paid to an individual if that individual is disabled and "insured," that is, the individual has worked long enough and paid social security taxes. The last date that a claimant meets the requirements of being insured is commonly referred to as the "date last insured." It is undisputed that Smith met the insured status requirements of the Social Security Act through September 30, 2011. Tr. 17, 19 and 151.

Supplemental security income is a federal income supplement program funded by general tax revenues (not social security taxes). It is designed to help aged, blind or other disabled individuals who have little or no income.

Smith, who was born in the United States on March 12, 1964,[5] graduated from

---

[4]Under the Local Rules of Court "[a] civil action brought to review a decision of the Social Security Administration denying a claim for social security disability benefits" is "adjudicated as an appeal." M.D.Pa. Local Rule 83.40.1.

[5]At the time of the administrative hearing and the administrative law judge's
(continued...)

high school in 1982 and can read, write, speak and understand the English language and perform basic mathematical functions. Tr. 109, 151, 156 and 161. During her elementary and secondary schooling, Smith attended regular education classes. Tr. 156. Smith also completed training to become a nurse's aid. Id.

Smith has past relevant work experience[6] as a cashier, described by a vocational expert as unskilled to semiskilled, light work; a machinist, described as light, semiskilled work; and as a waitress, described as unskilled, light work.[7] Tr. 26 and 55-56.

---

[5](...continued)
decision, Smith was 46 years of age and considered a "younger individual" whose age would not seriously impact her ability to adjust to other work. 20 C.F.R. §§ 404.1563(c) and 416.963(c). The Social Security regulations state that "[t]he term younger individual is used to denote an individual 18 through 49." 20 C.F.R., Part 404, Subpart P, Appendix 2, § 201(h)(1).

[6]Past relevant employment in the present case means work performed by Smith during the 15 years prior to the date her claim for disability was adjudicated by the Commissioner. 20 C.F.R. §§ 404.1560 and 404.1565.

[7]The terms sedentary, light, medium and heavy work are defined in the regulations of the Social Security Administration as follows:

> (a) *Sedentary work*. Sedentary work involves lifting
> no more than 10 pounds at a time and occasionally
> lifting or carrying articles like docket files, ledgers, and
> small tools. Although a sedentary job is defined as one
> which involves sitting, a certain amount of walking and
> standing is often necessary in carrying out job duties.
> Jobs are sedentary if walking and standing are required
> occasionally and other sedentary criteria are met.
>
> (b) *Light work*. Light work involves lifting no more
> than 20 pounds at a time with frequent lifting or
> carrying of objects weighing up to 10 pounds. Even
> though the weight lifted may be very little, a job is
> in this category when it requires a good deal of
> walking or standing, or when it involves sitting most

(continued...)

3

Smith has a limited earnings. Records of the Social Security Administration reveal that Smith had reported earnings in 1981 through 1989, 1994 and 1996 through 2008. Tr. 133. Smith's total earnings during those years were $88,296.54. Id. From 1996 through 2008, Smith's earnings were as follows:

| Year | Earnings |
|------|----------|
| 1996 | $1232.41 |
| 1997 | 785.00 |
| 1998 | 476.84 |
| 1999 | 513.90 |
| 2000 | 1700.92 |
| 2001 | 7118.72 |
| 2002 | 6976.31 |
| 2003 | 4520.25 |
| 2004 | 2695.67 |
| 2005 | 8135.95 |
| 2006 | 2219.36 |

---

[7](...continued)
of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

(c) *Medium work*. Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can do sedentary and light work.

(d) *Heavy work*. Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. If someone can do heavy work, we determine that he or she can also do medium, light, and sedentary work.

20 C.F.R. §§ 404.1567 and 416.967.

|  |  |
|--|--|
| 2007 | 3342.14 |
| 2008 | 3382.54 |

Id. Although Smith claims that she became disabled as the result of depression and anxiety on December 1, 2004,[8] she testified that her last employment was at a Burger King in November, 2008. Tr. 51 and 152. Smith claims that she has difficulty taking constructive criticism and dealing with people. Tr. 37 and 152. Smith does not claim that she is disabled as the result of a physical impairment only "psychological and emotional" impairments. Tr. 56. Smith testified that she smokes three pack of cigarettes per day to relieve stress and "as a crutch to help try to relax." Tr. 53. The record reveals that Smith has a history of using illegal drugs, including marijuana and cocaine. Tr. 214-215 and 224. In fact one of her emergency room visits (on September 5, 2006) at which she complained of depression was the day after she consumed cocaine. Tr. 215.

   A document completed by Smith on March 11, 2009, entitled "Function Report - Adult" and her testimony at the administrative hearing reveals that Smith exercises on a daily basis and enjoys reading and watching TV; she is able to perform household chores and take care of a learning disabled son (including preparing him meals, getting him off to school and helping him with his studies); she attends church services on a weekly basis and regularly goes to Bible study and support group meetings; she has no problem with personal care, such as dressing and bathing; she prepares meals on a daily basis; she does not drive because she does not own a vehicle but she does have a driver's license; and she socializes with a good friend who lives across the street on a daily basis. Tr. 43, 53 and 158-165.

---

[8] Smith testified that one cause of her depression and anxiety was the death of her son in August, 2000. Tr. 36.

For the reasons set forth below we will affirm the decision of the Commissioner denying Smith  disability insurance and supplemental security income benefits.

**STANDARD OF REVIEW**

When considering a social security appeal, we have plenary review of all legal issues decided by the Commissioner. See Poulos v. Commissioner of Social Security, 474 F.3d 88, 91 (3d Cir. 2007); Schaudeck v. Commissioner of Social Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999); Krysztoforski v. Chater, 55 F.3d 857, 858 (3d Cir. 1995).  However, our review of the Commissioner's findings of fact pursuant to 42 U.S.C. § 405(g) is to determine whether those findings are supported by "substantial evidence." Id.; Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993).  Factual findings which are supported by substantial evidence must be upheld. 42 U.S.C. §405(g); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001)("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently."); Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981)("Findings of fact by the Secretary must be accepted as conclusive by a reviewing court if supported by substantial evidence."); Keefe v. Shalala, 71 F.3d 1060, 1062 (2d Cir. 1995); Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001); Martin v. Sullivan, 894 F.2d 1520, 1529 & 1529 n.11 (11th Cir. 1990).

Substantial evidence "does not mean a large or considerable amount of evidence, but 'rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Pierce v. Underwood, 487 U.S. 552, 565 (1988)(quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)); Johnson v. Commissioner of Social Security, 529 F.3d 198, 200 (3d Cir. 2008);  Hartranft v. Apfel, 181 F.3d 358, 360

(3d Cir. 1999). Substantial evidence has been described as more than a mere scintilla of evidence but less than a preponderance. Brown, 845 F.2d at 1213. In an adequately developed factual record substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Federal Maritime Commission, 383 U.S. 607, 620 (1966).

Substantial evidence exists only "in relationship to all the other evidence in the record," Cotter, 642 F.2d at 706, and "must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1971). A single piece of evidence is not substantial evidence if the Commissioner ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason, 994 F.2d at 1064. The Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Johnson, 529 F.3d at 203; Cotter, 642 F.2d at 706-707. Therefore, a court reviewing the decision of the Commissioner must scrutinize the record as a whole. Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981); Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979).

**SEQUENTIAL EVALUATION PROCESS**

To receive disability benefits, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A). Furthermore,

[a]n individual shall be determined to be under a

7

> disability only if his physical or mental impairment
> or impairments are of such severity that he is not
> only unable to do his previous work but cannot,
> considering his age, education, and work experience,
> engage in any other kind of substantial gainful work
> which exists in the national economy, regardless of
> whether such work exists in the immediate area in which
> he lives, or whether a specific job vacancy exists for
> him, or whether he would be hired if he applied for
> work. For purposes of the preceding sentence (with
> respect to any individual), "work which exists in the
> national economy" means work which exists in significant
> numbers either in the region where such individual
> lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

The Commissioner utilizes a five-step process in evaluating disability insurance and supplemental security income claims. See 20 C.F.R. §404.1520 and 20 C.F.R. § 416.920; Poulos, 474 F.3d at 91-92. This process requires the Commissioner to consider, in sequence, whether a claimant (1) is engaging in substantial gainful activity,[9] (2) has an impairment that is severe or a combination of impairments that is severe,[10] (3) has an impairment or combination of impairments that meets or equals the requirements of a listed

---

[9] If the claimant is engaging in substantial gainful activity, the claimant is not disabled and the sequential evaluation proceeds no further.

[10] The determination of whether a claimant has any severe impairments, at step two of the sequential evaluation process, is a threshold test. 20 C.F.R. §§ 404.1520(c) and 416.920(c). If a claimant has no impairment or combination of impairments which significantly limits the claimant's physical or mental abilities to perform basic work activities, the claimant is "not disabled" and the evaluation process ends at step two. Id. If a claimant has any severe impairments, the evaluation process continues. 20 C.F.R. §§ 404.1520(d)-(g) and 416.920(d)-(g). Furthermore, all medically determinable impairments, severe and non-severe, are considered in the subsequent steps of the sequential evaluation process. 20 C.F.R. §§ 404.1523, 404.1545(a)(2), 416.923 and 416.945(a)(2).

8

impairment,[11] (4) has the residual functional capacity to return to his or her past work and (5) if not, whether he or she can perform other work in the national economy. Id. As part of step four the administrative law judge must determine the claimant's residual functional capacity. Id.[12]

Residual functional capacity is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. See Social Security Ruling 96-8p, 61 Fed. Reg. 34475 (July 2, 1996). A regular and continuing basis contemplates full-time employment and is defined as eight hours a day, five days per week or other similar schedule. The residual functional capacity assessment must include a discussion of the individual's abilities. Id; 20 C.F.R. §§ 404.1545 and 416.945; Hartranft, 181 F.3d at 359 n.1 ("'Residual functional capacity' is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).").

**DISCUSSION**

The administrative law judge at step one of the sequential evaluation process found that Smith had not engaged in substantial gainful work activity since December 1,

---

[11] If the claimant has an impairment or combination of impairments that meets or equals a listed impairment, the claimant is disabled. If the claimant does not have an impairment or combination of impairments that meets or equals a listed impairment, the sequential evaluation process proceeds to the next step. 20 C.F.R. § 404.1525 explains that the listing of impairments "describes for each of the major body systems impairments that [are] consider[ed] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." Section 404.1525 also explains that if an impairment does not meet or medically equal the criteria of a listing an applicant for benefits may still be found disabled at a later step in the sequential evaluation process.

[12] If the claimant has the residual functional capacity to do his or her past relevant work, the claimant is not disabled.

2004, the alleged disability onset date. Tr. 19.

At step two of the sequential evaluation process, the administrative law judge found that Smith had the following severe impairments: "depressive disorder and generalized anxiety disorder[.]" Id.

At step three of the sequential evaluation process the administrative law judge found that Smith's impairments did not individually or in combination meet or equal a listed impairment. Tr. 20-21.

At step four of the sequential evaluation process the administrative law judge found that Smith could not perform her prior relevant work but that she had

> the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: claimant would require a very stable work setting not subject to any more than occasional changes; the work should not entail contact of a direct nature with members of the public on anymore than an occasional basis, certainly not in terms of dispute resolution or receipt of complaints and that type of stress inducing type interaction; the presence of coworkers from an incidental standpoint would be acceptable, however the work should not be of a team type work orientation meaning a task interdependence between the subject worker and the other coworkers in terms of completion of the work assignments; the work also should not be more than a moderate production pace, it should not be one of those highly monitored, closely monitored high work quota systems in which there is constant supervision in terms of the meeting of quotas in the course of part of the work day/work week; the work should not entail making decisions or independent judgments beyond simply notifying the team leader or supervisor that there is a work issue or irregularity that needs resolution; and the work itself should be more of simple unskilled nature and not involving complex work processes or tasks.

Tr. 21-22. In concluding that Smith had the residual functional capacity to engage in this range of unskilled work, the administrative law judge relied on the opinion of Paul Taren,

10

Ph.D., a psychologist, who reviewed Smith's medical records on behalf of the Bureau of Disability Determination. Tr. 248-263. Dr. Taren on April 9, 2009, concluded that Smith suffered from a depressive disorder and a generalized anxiety disorder but that Smith had the ability "to carry out simple, routine tasks despite the limitations resulting from her impairments." Tr. 263. The administrative law judge also found that Smith's statements concerning her limitations were not credible to the extent that they were inconsistent with the above residual functional capacity. Tr. 23. The administrative law judge also rejected several low Global Assessment of Functioning (GAF) scores[13] noted in the record. Tr. 23-25. The record revealed that Smith had GAF scores of 30 (on one occasion),[14] 45, 50, 60

---

[13] The GAF score allows a clinician to indicate his judgment of a person's overall psychological, social and occupational functioning, in order to assess the person's mental health illness. *Diagnostic and Statistical Manual of Mental Disorders* 3–32 (4th ed. 1994). A GAF score is set within a particular range if either the symptom severity or the level of functioning falls within that range. Id. The score is useful in planning treatment and predicting outcomes. Id. The GAF rating is the single value that best reflects the individual's overall functioning at the time of examination. The rating, however, has two components: (1) symptom severity and (2) social and occupational functioning. The GAF is within a particular range if either the symptom severity or the social and occupational level of functioning falls within that range. When the individual's symptom severity and functioning level are discordant, the GAF rating reflects the worse of the two. Thus, a suicidal patient who is gainfully employed would have a GAF rating below 20. A GAF score of 21-30 represents behavior considerably influenced by delusions or hallucinations or serious impairment in communication or judgment or inability to function in almost all areas. A GAF score of 31-40 represents some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking or mood. Id. A GAF score of 41-50 indicates serious symptoms or any serious impairment in social, occupational or school functioning. Id. A GAF score of 51 to 60 represents moderate symptoms or any moderate difficulty in social, occupational, or school functioning. Id. A GAF score of 61 to 70 represents some mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well with some meaningful interpersonal relationships. Id.

[14] It is not clear that the GAF score of 30 was assessed by a licensed psychologist or psychiatrist. This GAF score is set forth on a document entitled "Adult TCM Referral
(continued...)

and 70. Tr. 236-237, 244, 247, 332 and 236. The ALJ rejected the low GAF scores of 30-50 and the high GAF score of 70 and accepted the GAF score of 60 because it represented moderate symptoms and was consistent with the evidence of record, including Dr. Taren's opinion. Tr. 24-25.

At step five, the administrative law judge based on a residual functional capacity as described above and the testimony of a vocational expert found that Smith had the ability to perform simple, unskilled work as a night cleaner, housekeeper, and garment inspector, and that there were a significant number of such jobs in regional, state and national economies. Tr. 27 and 57-59.

The administrative record in this case is 383 pages in length and we have thoroughly reviewed that record. The administrative law judge did an excellent job of reviewing Smith's vocational history and medical records in his decision. Tr. 17-27. Furthermore, the brief submitted by the Commissioner sufficiently reviews the medical and vocational evidence in this case. Doc. 11, Brief of Defendant.

Smith argues that the administrative law judge erred by (1) disregarding pertinent medical evidence, i.e., the GAF scores, and (2) finding that Smith was not credible. We find no merit in Smith's arguments.

The Social Security regulations require that an applicant for disability insurance benefits and supplemental security income benefits come forward with medical evidence "showing that [the applicant] has an impairment(s) and how severe it is during the time [the

---

[14](...continued)
Form/Authorization Entry Report" for "Carbon-Monroe-Pike Mental Health Retardation Program." The document was signed by a Nidicka Frederick but does not specify her position or qualifications. Tr. 200, 237-240.

12

applicant] say[s] [he or she is] disabled" and "showing how [the] impairment(s) affects [the applicant's] functioning during the time [the applicant] say[s] [he or she is] disabled." 20 C.F.R. §§ 404.1512(c) and 416.912(c).  Smith failed to provide such evidence. No treating physician provided a statement indicating that Smith had functional limitations for the requisite continuous 12 month period[15] that would prevent her from engaging in the range of simple, unskilled work set by the administrative law judge.

A low GAF score without more does not establish disability. See Gilroy v. Astrue, 2009 WL 3720580 at *1 (3d Cir. 2009)(finding that a physician report containing a GAF score of 45, if credited, would not require a finding of disability without further explanation).   We cannot conclude from the bare medical records that Smith is disabled. It was clearly appropriate for the ALJ to discount the low GAF scores in light of Dr. Taren's opinion and the absence of any detailed functional assessment from a treating psychiatrist.

The record contains a functional assessment from Dr. Taren  which fully supports the administrative law judge's mental residual functional capacity determination. The administrative law judge's reliance on that functional assessments was appropriate. See Chandler v. Commissioner of Soc. Sec., 667 F.3d. 356, 362 (3d Cir. 2011) ("Having found that the [state agency physician's] report was properly considered by the ALJ, we readily conclude that the ALJ's decision was supported by substantial evidence[.]"). The administrative law judge appropriately took into account Smith's mental functional limitations

---

[15] As stated earlier in this memorandum to receive disability benefits, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 432(d)(1)(A).

in the residual functional capacity assessment.

The administrative law judge stated that Smith's statements concerning the intensity, persistence and limiting effects of her symptoms were not credible to the extent that they were inconsistent with the ability to perform a range of simple, unskilled work. The administrative law judge was not required to accept Smith's subjective claims regarding her mental limitations. See Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983)(providing that credibility determinations as to a claimant's testimony regarding the claimant's limitations are for the administrative law judge to make). It is well-established that "an [administrative law judge's] findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since [the administrative law judge] is charged with the duty of observing a witness's demeanor . . . ." Walters v. Commissioner of Social Sec., 127 f.3d 525, 531 (6th Cir. 1997); see also Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 801 (10th Cir. 1991)("We defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess the witness credibility."). Because the administrative law judge observed Smith when she testified at the hearing on May 19, 2010, the administrative law judge is the one best suited to assess the credibility of Smith.

Our review of the administrative record reveals that the decision of the Commissioner is supported by substantial evidence. We will, therefore, pursuant to 42 U.S.C. § 405(g) affirm the decision of the Commissioner.

An appropriate order will be entered.

                                          s/A. Richard Caputo
                                          A. RICHARD CAPUTO
                                          United States District Judge

Dated: December 3, 2012